TAYLOR, J.
 

 After a jury trial, Garfield Jones was convicted of attempted first degree murder and armed robbery of Alex Gomez. He makes four arguments on appeal: (1) the trial court failed to conduct an adequate Richardson
 
 [1]
 
 hearing;
 
 (2)
 
 the trial court abused its discretion in denying the defendant’s motion for continuance; (3) the trial court abused its discretion in permitting the state to impeach the defendant’s statement with his prior convictions; and (4) the trial court erred in admitting into evidence a gun cleaning kit. Because we conclude that the trial court failed to conduct an adequate inquiry into a potential discovery violation and abused its discretion in denying the defendant’s motion for continuance, we reverse and remand for a new trial.
 

 At trial, Deputy Scott Popick testified that he responded to the scene minutes after the victim, Alex Gomez, was shot. He found Gomez lying in the doorway of an apartment, bleeding, screaming, and crying. Initially, Gomez told police that a friend, Nikko (Nnanniko Lightbourne), telephoned him and soon thereafter met him outside his apartment building. He said that Nikko was accompanied by a Hispanic male named Javier, who started shooting at him before taking $50 from him.
 

 At the hospital, approximately an hour later, Gomez gave a different account of the incident. He said that Nikko met him outside, along with a Jamaican male, and that Nikko shot him. About a half hour later, when Detective Kogan arrived at the hospital, Gomez told yet another version of the incident. This time he said that he and Nikko got into a physical altercation, during which Nikko put him in a bear hug. Then another person, a black male, came over and tried to hit him over the head with a handgun. When Gomez started to run away, he was shot in the back.
 

 Dwayne Lawrence testified that on the day of the shooting Nikko Lightbourne came to Lawrence’s apartment with a black man (Defendant), who Lightbourne introduced as “Spawn.” The three of them went to Gomez’s to buy marijuana. Lawrence stayed in the car. The other two were gone about ten minutes. During that time, Lawrence heard two or three gunshots. When Lightbourne and Spawn returned, they got in the car and drove off. As Spawn was driving, he took a gun out of his pocket and put it in his lap. Lightb-ourne told Spawn, “you shouldn’t have shot him.” Spawn responded, “he run, that’s why I did it.” He added, “I think he is dead.”
 

 Before the victim, Alex Gomez, was called to testify, the court took a short
 
 *709
 
 recess. Afterwards, the prosecutor advised the court that he had spoken to Gomez in the holding cell before trial and that Gomez told him that the defendant had threatened him in jail the last time he was brought back from prison to testify in this case.
 
 [2]
 
 The incident allegedly occurred on July 23, 2007, when he was in one cell and the defendant was in a separate cell directly across the hallway from him. At that time, the defendant told Gomez that he should have killed him that night or that he’s lucky that he didn’t kill him. The defendant then made a gesture with his hand, as if he had a gun, and commented that he knew where Gomez’s mother lived. Gomez also said that after the threats and threatening gestures, the defendant’s expression changed. He smiled and indicated that he would pay Gomez. The prosecutor said that he had just learned about this incident and that he immediately informed defense counsel.
 

 Defense counsel objected to admission of evidence of the defendant’s threats due to its late disclosure. She complained that she could not effectively cross-examine Gomez about this testimony without an opportunity to investigate the alleged threats. She said that she believed the prosecutor’s representation that he had just learned about the incident, but that permitting this evidence in the middle of trial would make this a “trial by ambush.” She explained to the court:
 

 It puts a lot of work in the middle of trial. I now have to go find witnesses and view the cell. I have to have a recess. I have to go interview people at BSO. I have to see the holding cell. I have to do all this in order to be able to cross-examine this guy when he had from July 23rd to August 2nd to tell [the prosecutor] about this statement.
 

 How is that fair? I have to put everything on hold now because of that. When this could have been said, if indeed it happened. I have to now find subpoenas for Terry Lynch. I have to go find out who the deputies were that were [there], I have to go see the room. I have to find out who the people were in the holding room to see if they saw anything. Otherwise, I’m blindly cross-examining.
 

 Defense counsel argued that evidence of the defendant’s threats to the victim would be highly prejudicial and, thus, should be excluded. She further requested a recess to investigate the incident. The trial court refused to recess the trial and admitted the evidence.
 

 Alex Gomez testified that on the night of the shooting, he received a telephone call for a half ounce of marijuana. Because the voice sounded familiar, Gomez agreed to meet the person downstairs at his building. While waiting outside his apartment, Gomez saw two men dressed in black approach him. He recognized one of the men as his neighbor’s cousin, Nikko. While Gomez was talking to Nikko, the defendant approached and pointed a gun at Gomez’s stomach. Nikko searched Gomez and took all his money and marijuana. Nikko told the defendant to kill Gomez because he knew too much. The defendant told Nikko to hold Gomez while he shot him. He then told Nikko to release him. As soon as Nikko did so, Gomez ran and the defendant started shooting at his back. The defendant shot Gomez three times — in the back of his arm, middle of his back, and upper buttocks. Gomez
 
 *710
 
 picked the defendant out of a photo lineup and identified him in court as the shooter.
 

 Near the end of his direct examination, Gomez testified about his contact with the defendant at the jail holding cell. He said that the defendant told him that he was lucky to be alive because he should have killed him. The defendant also made his hand into the shape of a gun and said, “Don’t forget I know where your mother lives.” Then “his face went from being real mean to just smiling,” and he offered to pay Gomez. On re-cross examination, Gomez testified that he reported the defendant’s threat to a jail deputy, but the deputy did nothing.
 

 Nikko testified that he knew the defendant, Garfield Jones, who also went by the name “Spawn.” On the day in question, Lawrence called Nikko because Lawrence wanted to rob Gomez, who Lawrence believed had $10,000 on him. Nikko agreed. When Lawrence showed up at Nikko’s apartment, they began looking for someone with a gun to assist with the robbery. After a few unsuccessful calls, they went to the defendant’s apartment and discussed plans for the robbery. The defendant agreed to get his gun and participate. Nikko testified that the defendant shot Gomez three times in the back.
 

 Officer Anthony Delpozzo testified concerning the consent search he conducted of the apartment that the defendant shared with his girlfriend, Melissa Martin. He did not find a gun or ammunition, but he found a gun cleaning kit in a hall closet. The kit was generic and could be used to clean any type of gun. The state introduced the gun cleaning kit into evidence at trial and mentioned it during closing argument, suggesting that the defendant had a gun.
 

 The defendant was found guilty and sentenced to life imprisonment on each count, to run concurrently.
 

 The
 
 Richardson
 
 Hearing
 

 The prosecutor has a duty to disclose in discovery “any written or recorded statements and the substance of any oral statements made by the defendant.” Fla. R.Crim. P. 3.220(b)(1)(C). This duty “extends to a defendant’s statements made to a witness who is not an agent of the state.”
 
 Landry v. State,
 
 931 So.2d 1063, 1065 (Fla. 4th DCA 2006). Further, the duty to disclose a defendant’s oral statement is a continuing discovery obligation. Fla. R.Crim. P. 3.2200).
 

 In this case, the defendant’s alleged threat against the victim was an “oral statement made by the defendant,” but it was not disclosed until the middle of trial. The defendant argues that the trial court failed to conduct a hearing pursuant to
 
 Richardson v. State,
 
 246 So.2d 771 (Fla.1971). The state counters that the defendant never objected on the basis of a
 
 Richardson
 
 violation, and that, in any event, the trial court conducted a sufficient
 
 Richardson
 
 hearing when it determined that the state’s inability to disclose the threats until it heard about it rendered the nondisclosure inadvertent.
 

 “There are no exact ‘magic words’ or phrases which must be used by the defense in order to necessitate the inquiry; only the fact that a discovery request has not been met.”
 
 Smith v. State,
 
 7 So.3d 473, 506 (Fla.2009) (citing
 
 Copeland v. State,
 
 566 So.2d 856, 858 (Fla. 1st DCA 1990);
 
 In re F.R.,
 
 539 So.2d 588, 589 (Fla. 1st DCA 1989)). Once a trial court has notice of a discovery violation, the court must conduct a
 
 Richardson
 
 hearing to inquire about the circumstances surrounding the state’s violation of the discovery rules and examine the possible prejudice to the defendant.
 
 Id.
 
 at 505. This requirement applies when the court learns of a
 
 possible
 
 discovery violation, in order to determine
 
 *711
 
 whether there has been an actual discovery violation.
 
 Landry,
 
 9B1 So.2d at 1065. It also applies even if the defendant does not request a
 
 Richardson
 
 hearing.
 
 See C.D.B. v. State,
 
 662 So.2d 738, 741 (Fla. 1st DCA 1995); Sears
 
 v. State,
 
 656 So.2d 595 (Fla. 1st DCA 1995).
 
 Cf. Major v. State,
 
 979 So.2d 243, 244 (Fla. 3d DCA 2007) (holding that “[wjhere a defendant fails to timely object to a discovery violation or to request a
 
 Richardson
 
 hearing, the defendant does not preserve the point for appellate review”).
 

 Unlike the defendant in
 
 Major,
 
 who failed to lodge any objection whatsoever to the changed opinion of a medical examiner,
 
 see
 
 979 So.2d at 244, here defense counsel objected to introducing the defendant’s threatening statements to the victim. Although she acknowledged that the prosecutor disclosed the defendant’s threat as soon as he learned of it, she still invoked the need for a
 
 Richardson
 
 hearing. According to the defendant, Gomez’s testimony that he told a jail deputy about the threat raised the possibility that the prosecutor may have been chargeable with this knowledge.
 
 See, e.g., Tarrant v. State,
 
 668 So.2d 223, 225 (Fla. 4th DCA 1996) (“It is well-settled that the state is charged with constructive knowledge and possession of evidence withheld by state agents, including law enforcement officers.”).
 

 Defendant contends that the trial court did not determine
 
 whether
 
 there was a discovery violation and, consequently, it did not conduct an adequate inquiry into three other required areas: “(1) whether the discovery violation was willful or inadvertent; (2) whether it was trivial or substantial; and (3) whether it had a prejudicial effect on the opposing party’s trial preparation.”
 
 McDuffie v. State,
 
 970 So.2d 312, 321 (Fla.2007). Contrary to the defendant’s assertions, the trial court did find that the late disclosure of the threats was inadvertent, which presupposes that the trial court found that there was a discovery -violation. However, the trial court did not determine whether it was trivial or substantial and whether the violation prejudiced the defendant’s ability to properly prepare for trial.
 
 See Richardson,
 
 246 So.2d at 775.
 

 The defendant argues that he was procedurally prejudiced by the trial court’s failure to hold an adequate
 
 Richardson
 
 hearing. He contends that a timely disclosure of the alleged threats would have allowed his attorney to investigate the incident and search for evidence to refute it or at least cast doubt on the victim’s testimony regarding the incident. In addition, he could have called into question the victim’s credibility as a whole. We agree that the defendant has demonstrated procedural prejudice that precludes us from deeming the error harmless.
 
 See Scipio v. State,
 
 928 So.2d 1138, 1150 (Fla.2006);
 
 State v. Schopp,
 
 653 So.2d 1016, 1020 (Fla.1995).
 

 Motion for Continuance
 

 The denial of a motion for continuance is committed to the sound discretion of the trial judge.
 
 Hernandez-Alberto v. State,
 
 889 So.2d 721, 730 (Fla.2004). An abuse of discretion is generally not found unless the court’s ruling on the continuance results in undue prejudice to the defendant.
 
 Id.
 

 The state argues that because the court session ended at 5:00 p.m. on the day the victim testified, defense counsel could have conducted her investigation that evening before cross-examining the victim the next morning. The defense counters by citing to our recent decision in
 
 Pickel v. State,
 
 32 So.3d 638 (Fla. 4th DCA 2009). There, the defense complained that it had been prejudiced by the trial court’s denial of a motion for a continuance after the state disclosed its DNA statistical expert on the first day of trial.
 
 Id.
 
 at 638-39. We agreed, stat
 
 *712
 
 ing that “[r]ushed hotel depositions in the nighttime by exhausted defense counsel cannot possibly balance the scales of preparation.”
 
 Id.
 

 The defendant also relies on
 
 Boland v. State,
 
 946 So.2d 642 (Fla. 4th DCA 2007). In
 
 Boland,
 
 the defendant was charged with armed robbery and burglary.
 
 Id.
 
 at 643. The victim and the defendant resided in the same detention center and communicated with each other at some point before trial.
 
 Id.
 
 According to the victim, the defendant told him he was sorry about committing the crimes and asked him not to testify against him, or to testify falsely.
 
 Id.
 
 at 643-44. The victim agreed but asked the defendant to write a letter telling him exactly what to say.
 
 Id.
 
 at 644. On the day of trial, the victim brought the letter with him to the courthouse.
 
 Id.
 
 He gave it to the prosecutor, who immediately shared it with defense counsel.
 
 Id.
 
 The defendant moved for a continuance to allow a handwriting expert to analyze the letter purportedly written by the defendant.
 
 Id.
 
 The trial court denied the motion.
 
 Id.
 
 On appeal, we found that the denial of the motion for continuance was an abuse of discretion and reversed for a new trial. We were unable to say that the error was harmless because “[h]ad the outcome of that analysis supported the defendant’s position that he didn’t write the letter, the victim’s credibility would have been severely undermined.”
 
 Id.
 
 at 645.
 
 See also Griffin v. State,
 
 598 So.2d 254 (Fla. 1st DCA 1992) (holding that state’s late disclosure of witness required a continuance).
 

 Similarly, in this case, had the defendant been granted a recess to investigate Gomez’s claim that the defendant threatened him in jail, the investigation might have produced evidence to cast doubt on this claim, as well as on his overall veracity. Among other things, defense counsel could have investigated Gomez’s statement that he reported the threat to a jail deputy. We conclude that the denial of the motion for a recess to allow counsel sufficient time to investigate the matter was an abuse of discretion warranting a new trial.
 

 The Gun Cleaning Kit
 

 Because we are reversing and remanding this case for a new trial, we comment briefly on an issue raised by defendant that could recur. At the commencement of trial, the defendant moved in limine to exclude the gun cleaning kit seized from the defendant’s home on the ground that it was irrelevant and that any probative value of this evidence was outweighed by its prejudicial effect. We conclude that the trial court erred in denying the motion and admitting the gun cleaning kit into evidence.
 

 “Relevant evidence is evidence tending to prove or disprove a material fact.” § 90.401, Fla. Stat. (2008). “The trial court has broad discretion in determining the relevance of evidence and such determination will not be disturbed absent an abuse of discretion.”
 
 Heath v. State,
 
 648 So.2d 660, 664 (Fla.1994).
 

 “Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.” § 90.403, Fla. Stat. (2008). “The weighing of relevance versus prejudice or confusion is best performed by the trial judge who is present and best able to compare the two.”
 
 Sims v. Brown,
 
 574 So.2d 131, 133 (Fla.1991).
 

 “[W]here the evidence at trial does not link a weapon seized to the crime charged, the weapon is inadmissible.”
 
 O’Connor v. State,
 
 835 So.2d 1226, 1231 (Fla. 4th DCA 2003).
 
 Accord Huhn v. State,
 
 511 So.2d 583, 589 (Fla. 4th DCA
 
 *713
 
 1987) (“Here, there is nothing unlawful about Huhn’s ownership of the gun, and nothing to connect the particular gun to the crimes for which Huhn was on trial. We conclude that the gun was not relevant to the case.”).
 

 Similarly, in this case, there was nothing unlawful about the defendant’s ownership of a gun cleaning kit and nothing was shown to connect it to the crimes charged. Its admission served only to suggest that at some point the defendant owned a gun.
 

 Finally, because we are reversing and remanding this case for a new trial, we need not comment on the defendant’s argument that the trial court erred in permitting the state to impeach his exculpatory statement with his felony convictions.
 

 Reversed, and Remanded for a new trial.
 

 STEVENSON and MAY, JJ., concur.
 

 [1]
 

 .
 
 Richardson v. State,
 
 246 So,2d 771 (Fla.1971).
 

 [2]
 

 . During this time period, Gomez was in custody serving a prison sentence for felony possession of marijuana.