GERBER, J.
 

 The defendant appeals his convictions for sexual battery while armed and aggravated assault with a deadly weapon. The issue we face is whether the defendant preserved an alleged discovery violation for review when the alleged violation occurred during the state’s direct examination and the defendant completed his cross-examination before raising the alleged violation. We hold that the defendant did not preserve the alleged violation for review under those circumstances. Therefore, we affirm.
 

 A lengthy history is necessary to give full context to this issue. According to the victim, while she was walking home from a store late at night, a car pulled up behind her. A man then walked up to her with a machete in his hand and made her get in
 
 *942
 
 the car’s passenger seat with him. Another man was driving. They drove for a while and then stopped on the side of a road. The men raped her and made her perform a sexual act on them. They then drove to the beach and raped her again. They later abandoned her on the side of a road. At some point during the ordeal, the men called each other “cousins.”
 

 After the victim was examined at a hospital that night, she described for the police the car in which she was abducted and certain items within the car. The next day, the police found a car fitting that description in the driveway of a mobile home located four or five blocks from where the victim was abducted. The police determined that the car was registered to the defendant. The police then showed the victim a photo array which included the defendant’s photo. The victim, without being prompted, immediately identified the defendant. The police later arrested the defendant and removed from his car a machete and other items which the victim described.
 

 A police crime lab analyst later issued a report regarding DNA testing which she conducted in the case. According to the report, the DNA profile obtained from semen stains on the victim’s vaginal swabs, underwear, and pants indicated the presence of more than one individual. The victim’s husband was excluded as a contributor to this DNA profile. The defendant, however, could not be excluded. The state included the report in its discovery disclosure to the defendant.
 

 In his opening statement, the defendant claimed that he and the alleged victim had consensual sex. He stated that “[p]erhaps the most important evidence in the case will be the physical or scientific evidence.” He suggested that the DNA results showing the presence of more than one individual simply indicated that, close to the date of the alleged incident, the victim was having sex with men other than her husband.
 

 The crime lab analyst testified during the state’s case. During direct examination, she said that the defendant and the same unknown male contributed to the DNA profile in all of the semen stains. The analyst then disclosed new information:
 

 Q. Anything else that you can tell us about [the unknown male’s profile] as it compares to [the defendant’s] profile? ... Are there any similarities there or anything like that?
 

 A. ... [T]here is an indication ... it could be — it’s potentially a family member.
 

 Q. Would that be a brother, or could it be a cousin or something else?
 

 A. Yes, it could be a brother or a cousin. Even in the same — basically the same lineage you know, overall. Because — or if it’s from a sub-culture, a group of like small islands tend[s] to have the same markers that are found in their profiles.
 

 Q. Small islands? Any other places like that?
 

 A. Tribes .... Things like that.
 

 The defendant did not object to this new information. Later, the defendant cross-examined the analyst for approximately an hour. Included within this cross-examination was a question regarding the analyst’s testimony about the defendant and the unknown male potentially being related. The defendant asked, “[Y]ou testified that [the unknown male] could be related to [the defendant]?” The analyst responded, “It’s a mixture, so there’s [two] people at least in the mixture. So I said [the defendant] is a portion of the profile, and then there’s the other person that I don’t have a name for.” After the analyst completed
 
 *943
 
 her testimony, the court recessed for the evening.
 

 The following morning, the defendant objected on the basis of a discovery violation. The defendant’s counsel conceded, “I did not make a contemporaneous objection yesterday, and I regret that I didn’t.” The defendant then explained that he did not know the analyst would testily that he and the unknown male who contributed to the DNA profile were potentially related. According to the defendant, if he had known of the analyst’s opinion, then he could have consulted his own expert; dealt with the analyst’s opinion during jury selection, opening statement, and cross-examination; and called his own expert as a witness. The defendant then requested a mistrial, arguing that the violation was prejudicial. According to the defendant, his opening statement was based on his anticipated testimony that he was alone with the alleged victim, and the analyst’s opinion that he and the unknown male were related undermined his claim and bolstered the victim’s claim that she was raped by two men who called each other “cousins.” The defendant concluded, “[Tjhere couldn’t be any[ ]more damning testimony.”
 

 The trial court found there was no
 
 Richardson
 

 [1]
 

 violation and denied the motion for mistrial. The court reasoned, “I don’t think [the analyst] changed her opinion any. She just made it a little bit — she was just answering ... questions.”
 

 After the jury found the defendant guilty, the defendant moved for a new trial. The defendant primarily argued that the state’s failure to disclose the analyst’s full opinion was a discovery violation and, therefore, the trial court’s
 
 Richardson
 
 inquiry was inadequate. The trial court denied the motion. i
 

 This appeal followed. The defendant again primarily argues that the state’s failure to disclose the analyst’s full opinion was a discovery violation and, therefore, the trial court’s
 
 Richardson
 
 inquiry was inadequate. The defendant also argues that the court erred in not granting a mistrial or a new trial.
 

 The state argues that the defendant failed to preserve these points for review because the defendant did not timely object to the analyst’s testimony. The state relies on
 
 Major v.
 
 State, 979 So.2d 243 (Fla. 3d DCA 2007), in which the third district held, “Where a defendant fails to timely object to a discovery violation or to request a
 
 Richardson
 
 hearing, the defendant does not preserve the point for appellate review.”
 
 Id.
 
 at 244.
 

 We agree with the state’s reliance on
 
 Major
 
 for that proposition. However,
 
 Major
 
 is factually distinguishable. There, the defendant raised a discovery violation
 
 for the first time on appeal. Id.
 
 at 245. Here, the defendant raised the alleged discovery violation
 
 at trial.
 
 Thus, we face an issue different from that which the third district faced in
 
 Major.
 
 The issue we face is whether the defendant preserved the alleged discovery violation for review when the alleged violation occurred during the state’s direct examination and the defendant completed his cross-examination before raising the alleged violation.
 

 In considering this issue, we have found cases involving a defendant preserving an alleged discovery violation for review when he raises the violation on the first day of trial,
 
 Pickel v.
 
 State, 32 So.3d 638, 639-40 (Fla. 4th DCA 2009); before the state’s direct examination,
 
 Jones v. State,
 
 32 So.3d 706, 709-10 (Fla. 4th DCA 2010); during the state’s direct examina
 
 *944
 
 tion,
 
 State v. Evans,
 
 770 So.2d 1174, 1182 (Fla.2000); after the state’s direct examination,
 
 Smith v. State,
 
 7 So.3d 473, 505-06 (Fla.2009); and during his cross-examination,
 
 Powell v. State,
 
 912 So.2d 698, 700-01 (Fla. 2d DCA 2005). However, we have not found a case in which the alleged violation occurs during the state’s direct examination and the defendant completes his cross-examination before raising the alleged violation.
 

 Treating the issue as one of first impression, we hold that a defendant does not preserve an alleged discovery violation for review when the alleged violation occurs during the state’s direct examination and the defendant completes his cross-examination before raising the alleged violation. To hold otherwise would allow a defendant to intentionally delay raising a discovery violation during the state’s direct examination in order to first test the effectiveness of his cross-examination. Although nothing in the record suggests that was the defendant’s intent here, today’s ruling guards against such a possibility in future cases.
 

 Because we find the defendant did not preserve the alleged discovery violation for review, we cannot reach the issue of whether a discovery violation even occurred.
 
 See Major,
 
 979 So.2d at 245 n. 2 (“[W]e find that we cannot reach the issue of whether a discovery violation occurred because this was not preserved for appellate review.”). Thus, on the discovery violation argument, we affirm. On all other arguments which the defendant raises in this appeal, we affirm without further comment.
 

 Affirmed.
 

 POLEN and LEVINE, JJ., concur.
 

 [1]
 

 .
 
 Richardson v. State,
 
 246 So.2d 771 (Fla.1971).