MAY, J.
‘ The defendant appeals his conviction and life sentence as a habitual felony offender on charges of attempted first degree murder and attempted robbery. He argues the trial court erred in admitting several pieces of evidence because they were irrelevant. We disagree and affirm.
On his way to work, a deputy sheriff observed the defendant, who was riding a motorcycle, run a traffic light. He activated his lights and followed the motorcycle into the parking lot -of a repair shop. When the deputy asked for the defendant’s license, the defendant indicated that he did not have a license and was an Opa-Locka police officer. The defendant then pushed the deputy and started running. The deputy chased him on foot. Within a few seconds, the defendant turned around and shot at the deputy, hitting him in the back of the head.
Witnesses observed the initial encounter at the repair shop, saw the defendant with a gun and holster, observed the defendant wearing a red shirt running from the area where the deputy had fallen, and saw him hiding in a nearby condominium. A detective observed the defendant hiding behind a vehicle. When the detective identified himself, the defendant fled toward a vehicle that was pulling out of a parking space. He jumped on the vehicle, pulled the door handles, and screamed at the occupants. When he was unable to get in the vehicle, he fled, but was quickly apprehended.
Officers were able to locate a red shirt worn by the defendant, a black nylon holster, a Glock .45 caliber firearm containing eight .45 cartridges, and two spent casings not far from where the deputy had fallen. The cartridges were manufactured by the same company as the two spent casings.
A DNA analyst identified the defendant’s DNA found on the Glock. A firearms expert identified the two casings as having been fired from the Glock. She identified two other casings found in the defendant’s home that were also fired by the same Glock.
Testimony revealed that the defendant had asked another man to buy a gun for him three months prior to the shooting. The man purchased a Glock from a pawn shop for the defendant. The man had previously purchased another firearm for the defendant. A gun range manager had seen the defendant at the range several times. The defendant’s girlfriend had seen the defendant with a gun; he would carry the gun in a black holster.
*168 The defendant gave a recorded statement to the police in which he immediately informed them that he had been in the Marines. He admitted to running a light and pulling into the repair shop. However, he indicated that he told the victim he was trying to become an officer. He was nervous when stopped because he was on probation and his license was revoked. He fled because he was nervous. He indicated that the victim pushed him and threatened to shoot him if he did not stop. He started ducking because he had learned that evasion in the Marines. He heard the gun shots, but kept running. He jumped a fence, cut his hand, and hid in the meter room of the condominium. He took off his shirt because he overheard an officer describing him as wearing a red shirt. He jumped on another vehicle to get a ride because he was scared. He adamantly denied owning a gun and claimed he had been wearing the holster for a BB gun. He indicated that a friend had brought guns to his house and left them there.
Pursuant to a search warrant, law enforcement seized the following items from the defendant’s home:
• A Glock magazine with ten .45 caliber CCI bullets.
• A twenty-eight round capacity magazine for a .45 caliber firearm that was loaded with twenty-five CCI rounds.
• Fourteen .40 caliber cartridges loaded in a magazine inside a blue box.
• A clear plastic tray with five .45 caliber CCI bullets from which police developed two latent fingerprints later identified as the defendant’s.
• A black plastic tray with .40 caliber ammunition from several different manufacturers.
• A black gun box manufactured by Glock.
• A blue gun box manufactured by Smith and Wesson.
• A receipt, found inside the black gun box, for the sale of a weapon to the defendant’s friend.
• A manila envelope with serial number KTB400 printed on it, found inside the black Glock box, containing two .45 caliber CCI casings.
• Two target range shooting silhouettes.
The defendant moved to suppress the items seized and his statement. He claimed the items seized were irrelevant and his statement did not amount to a confession and were therefore more prejudicial than probative. The State responded that the defendant made relevant admissions in his statement and the items seized established the falsity of his representations and confirmed that the gun used to shoot the deputy belonged to the defendant.
The court denied both motions and admitted the statement and the items into evidence over defense objections. The court found the seized items were probative of whether the defendant shot the victim and to show the falsity of his post-arrest statement to the police. The statement was relevant to infer consciousness of guilt. The court also permitted a witness to testify that the defendant had not been in the Marines, again to show consciousness of guilt.
The jury found the defendant guilty of attempted first degree murder and attempted robbery, a lesser included offense of carjacking. The court sentenced him to life as a habitual offender on the attempted murder conviction with a twenty-five year mandatory minimum and to a concurrent term of ten years as a habitual offender on the attempted robbery charge.
The sole issue on appeal is whether the court erred in admitting the statement, the seized items, and the witness’ testimo *169 ny that the defendant was not in the Marines. He claims the evidence was irrelevant and overly prejudicial. We find the issues preserved for this appeal. Nevertheless, we find no error in the trial court’s admission of the evidence.
“Relevant evidence is evidence tending to prove or disprove a material fact.” § 90.401, Fla. Stat. “The trial court has broad discretion in determining the relevance of evidence and such determination will not be disturbed absent an abuse of discretion.” Jones v. State, 32 So.3d 706, 712 (Fla. 4th DCA 2010) (quoting Heath v. State, 648 So.2d 660, 664 (Fla.1994)). “It is well-settled that weapons uncovered in a search of premises controlled by a defendant can be admissible in evidence.” O’Connor v. State, 835 So.2d 1226, 1230 (Fla. 4th DCA 2003).
The defendant relies on Jones v. State, 32 So.3d 706 (Fla. 4th DCA 2010), and Huhn v. State, 511 So.2d 583 (Fla. 4th DCA 1987), to support his argument that the items seized should not have been admitted. We find the cases factually distinguishable. In each of those cases, the admission of the gun could not be connected to any relevant fact. Here, however, the cartridges found at the defendant’s house matched those found at the scene, the gun box matched the gun used in the shooting[1], and the other items rebutted the defendant’s statement that he did not own guns. We also find Stoll v. State, 762 So.2d 870 (Fla.2000), distinguishable. There, the admission of testimony from a rebuttal -witness about what the victim had said was found to be inadmissible hearsay. While the court commented that the State cannot use a witness to rebut statements made by the defendant when the State introduced the defendant’s testimony, the ruling actually rested on hearsay objections.
Even if the admission of these items constituted error, we would find the error harmless. State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). The record demonstrates beyond a reasonable doubt that the error did not contribute to the verdict.

Affirmed.

WARNER and POLEN, JJ., concur.

. The defendant does not challenge the admission of the gun box.