MAY, C.J.
The defendant appeals his conviction and sentence on two counts of lewd and lascivious molestation, one count of lewd and lascivious exhibition, and one count of sexual activity with a child. He claims error in the trial court’s failure to conduct *932 a Richardson[1] hearing, denial of his motion for continuance, and limitation of cross-examination. He also argues the ineffectiveness of trial counsel. We find merit in the denial of the defendant’s motion for continuance and reverse.
The charges arose when the defendant’s estranged wife, who was then living in Michigan, called the Boynton Beach Police Department, alleging the defendant had molested their daughter several times the year before when the family resided in Florida. The daughter was twelve or thirteen at the time. The probable cause affidavit contained attestations from the estranged wife and daughter that the abuse consisted of specific acts. It also indicated that both Boynton Beach and Michigan authorities were investigating the allegations.
When the family lived in Florida, the defendant had been the primary caretaker of his daughter; the ex-wife spent little time at home. The arrangement remained the same when the family moved to Michigan together. The family remained together until the defendant left Michigan to set up a business in Ocala with his father. He planned to have his daughter move to Ocala once the business was off the ground.
The family had moved ten to eleven times and the daughter had attended twelve different schools. According to the daughter, she felt settled and stable in Michigan for the first time in her life, and was developing strong friendships. She did not want to move, but she knew she “didn’t have any influence” over the move. Around the same time the estranged wife called the Boynton Beach police, the daughter was also “really disappointed” in the defendant because he had not given her the particular cell phone she wanted for her birthday.
The defendant was subsequently arrested in Florida. Ten days later, a medical exam was performed on the daughter by the Michigan Child Protection Team. The examining physician authored a report to the daughter’s primary care physician. The document was stamped “Unsigned Document-NOT to be used for legal purposes.” The Michigan Exam Report indicated no physical signs of sexual abuse.
About two months after the initial phone call to police, the State of Florida filed a four-count Information charging the defendant with specific acts of sexual abuse during a seven-month period a year before. Over time, counts were added, modified, and dropped in different versions of the charging instrument.
Nearly a year and a half after the original charges were filed, the State filed a Second Amended Information. This Information charged the defendant with seven counts, six of which alleged entirely different acts from the original Information, and covered a period of more than five years. The defendant was now accused of having molested his daughter when she was under the age of twelve.
The State filed its Answer to Notice of Discovery, purporting to provide all information and material, including reports and statements, within the State’s possession. The State’s exhibit list included only four Category “A” witnesses: the defendant’s ex-wife, his daughter, a Boynton Beach police officer, and a Michigan police officer. Neither the author of the Michigan Exam Report nor any other medical provider was identified as a person known to have information regarding the case.
The evidence checklist included only statements of the defendant, witness state *933 ments, a video tape, and a recorded phone call between the defendant and victim. Despite the Michigan Exam Report having been created almost two months earlier, it was not included on the State’s checklist. The State’s “Supplemental Discovery” disclosed statements attributed to the defendant, additional Michigan and Florida law enforcement officers listed as Category “A” witnesses, certified copies of the defendant’s prior convictions, and correspondence from the defendant. None of the filings disclosed the Michigan Exam Report or identified anyone with knowledge of the Report.
About eighteen months after the abuse was originally reported to law enforcement and five months prior to trial, a previous public defender traveled to Michigan to take the depositions of the defendant’s daughter and ex-wife. In those depositions, the Michigan medical exam was disclosed.
Approximately two months later, while the defendant was representing himself, he wrote to the trial court requesting the records of other medical exams performed on his daughter in 2007 by a family doctor in Florida. The trial court treated the lengthy letter as a motion to disqualify and summarily denied it without addressing the defendant’s request.
Subsequently, the trial court again appointed a public defender to represent the defendant. The lawyer who took over the case was involved in two trials throughout the time leading up to the defendant’s trial. Nevertheless, he reviewed the Michigan deposition transcripts and discovered the Michigan Exam Report. Because he thought the Report might be exculpatory, and had not been identified or turned over by the State, he requested the State to turn over the records immediately. The State refused.
Defense counsel then filed a Motion to Issue Subpoenas Duces Tecum and scheduled a hearing a week later, seventeen days before the trial ultimately began. On the day of the hearing, the State agreed to turn over the Michigan Exam Report, but the hearing to determine the status of the Florida medical records was postponed four days. The Michigan Exam Report was turned over a mere thirteen days before trial. The next day, the trial court granted the defense motion for subpoena of the Florida medical records, but required an in camera inspection before release.
On the following day, defense counsel moved to continue the trial for sixty days. The motion specifically referenced the State’s failure to disclose the Michigan Exam Report and that the trial court had just granted the defense motion to issue a subpoena for the Florida medical records. Defense counsel had just completed another week-long trial the week before the defendant’s trial was scheduled to begin.
After being told that the trial would be continued for nearly five months, defense counsel learned that the trial had been set before a different judge and would commence in four days. When defense counsel asked to be heard, he was informed that he would be heard on the trial court’s next business day, the morning of trial.
Prior to the hearing, defense counsel filed a Statement of Counsel, in which he explained the State’s extreme delay in disclosing and providing the Michigan Exam Report, and the fact that he had yet to obtain the Florida medical records. Defense counsel explained that this had prevented him from properly preparing for trial.
Before jury selection began, the pre-trial judge heard the motion for continuance. Defense counsel reiterated the basis for the motion. The State responded that the *934 Michigan Exam Report was not exculpatory, and that the prior public defender had learned of the report during depositions. The pre-trial judge denied the motion, focusing on what she regarded as the prior public defender’s lack of due diligence in following up on the Michigan depositions that occurred five months before trial.
At trial, the State called the defendant’s daughter and ex-wife. The daughter described the defendant as strict and controlling. She testified that the defendant had sexually abused her frequently. She described incidents of inappropriate touching from when she was ten or eleven years old. She testified that she had told her mother about what had happened.
The daughter specifically detailed other incidents of sexual abuse, including penetration. The defendant regularly engaged in games with her, in which he would try to take off her shirt and inappropriately touch her. She testified that she would scratch, bite, or kick him. The defendant told the daughter that he knew this was wrong and she should not tell anyone about it because he could go to jail. On at least two occasions, she indicated the activity was painful with the pain lasting throughout the next day.
The defendant’s ex-wife briefly testified that a physical exam had been conducted in Michigan, but said nothing about the findings. The trial court allowed defense counsel to ask the ex-wife about her personal observations of the Florida medical exam, but did not allow him to question her about the exam’s findings or opinions. Because defense counsel did not have the Florida medical records and had not deposed the examining physician, he was unable to challenge the ex-wife’s assertions.
At the close of the State’s evidence, the trial court denied the defense motion for judgment of acquittal. The defense called no witnesses and put on no evidence. The defendant was unable to introduce either the Michigan Exam Report or the Florida medical records, and was unable to provide expert testimony about either.
The State’s closing argument focused on these omissions. The State told the jury:
[T]he other issue we have here is that [the daughter] went to see this doctor.... And this is where you can use your common sense, members of the jury, we have not heard any expert testimony about what the defense proffered during closing statement that there would be a — -
At that point, the trial court sustained a defense objection of burden-shifting, but gave no curative instruction. The State characterized the Florida exam as superficial, and told the jury that the defense argument that medical evidence would establish no injury was merely argument and speculation.
After deliberating for part of two days, the jury returned verdicts of not guilty on three counts and guilty on four counts. Defense counsel moved for a new trial. He argued that the defense had been prejudiced by the State’s late disclosure of the Michigan Exam Report, and the consequent inability to retain an expert. Defense counsel even indicated that he had spoken with an expert, who indicated that the Michigan Exam Report contradicted the daughter’s testimony, but the expert was too expensive.
At the hearing on the motion, the State retained an expert to testify about the Michigan Exam Report. Its witness opined that the Michigan exam findings were not exculpatory. The trial judge denied the motion because the pre-trial judge had denied the motion for a continuance, and because the jury had acquitted the defendant on the penetration counts.
*935 The trial court sentenced the defendant to: (a) twenty-five years in prison on count one; (b) fifteen years in prison on count three, concurrent to count one; (c) fifteen years in prison on count six, consecutive to counts one and three but concurrent to count seven; and (d) thirty years in prison on count seven, concurrent to count six but consecutive to counts one and three. The total sentence amounted to fifty-five years in prison. From his convictions and sentences, the defendant now appeals.
The first two issues raised on appeal are interrelated. The defendant first argues the trial judge erred in not conducting a Richardson hearing when advised that the State had disclosed neither the Michigan Exam Report nor the Florida medical records. Closely related is the pre-trial court’s denial of the motion for continuance based on a number of reasons, primary among them the need to obtain an expert because of the recently acquired Michigan Exam Report and the, yet to be obtained, Florida medical records. We address the issues in reverse order. We do so because the defendant primarily relied on the denial of the motion for continuance in the motion for new trial and only tangentially addressed the Richardson issue.
“The denial of a motion for continuance is committed to the sound discretion of the trial judge.” Jones v. State, 32 So.3d 706, 711 (Fla. 4th DCA 2010) (citing Hernandez-Alberto v. State, 889 So.2d 721, 730 (Fla.2004)). “An abuse of discretion is generally not found unless the court’s ruling on the continuance results in undue prejudice to the defendant.” Id.
There are seven criteria to be considered when evaluating a motion for continuance. They include:
1) the time available for preparation,
2) the likelihood of prejudice from the denial,
3) the defendant’s role in shortening preparation time,
4) the complexity of the case,
5) the availability of discovery,
6) the adequacy of counsel actually provided and
7) the skill and experience of chosen counsel and his pre-retention experience with either the defendant or the alleged crime.
Brown v. State, 66 So.3d 1046, 1048 (Fla. 4th DCA 2011). When these criteria are applied, we conclude that the pre-trial court abused its discretion in denying the continuance.
First, while the public defender originally represented the defendant, the office did not represent the defendant for more than a month before the trial court reappointed it. When the reappointment occurred, the assigned public defender was involved in two other trials. He had two months to become familiar with the case and prepare for trial.
Even so, once he discovered the Michigan Exam Report, he asked the State to supply it. The State refused. It was only thirteen days before trial that the State ultimately provided the Report.
Second, defense counsel simultaneously requested a subpoena for the Florida medical records. The trial court did not rule on that motion until twelve days before trial. Given the circumstances, the likelihood of prejudice was great.
Third, the defendant played no role in shortening the preparation time. While he had continuously requested an expedited trial, he had specifically requested the Florida medical records during a period of time he was unrepresented. The pre-trial court treated the request as a motion to disqualify and did not rule on the records request.
*936 Fourth, the case was complex. It involved multiple charges that had been changed multiple times, including different acts and different time frames. Fifth, the discovery was available with the opportunity for a little more time.
Sixth, the former public defender had failed to follow up on the Michigan Exam Report or the Florida medical records. However, the newly appointed public defender was experienced, but had not been given sufficient time to explore them. Seventh, the new public defender had approximately sixty days to prepare, during which time he was in trial on two other cases. Nevertheless, he had taken the initiative to follow through on the Michigan Exam Report and the Florida medical records. He timely moved to compel production of the records and to continue the trial for a short period of time.
Having considered the facts based on these seven criteria, we find an abuse of discretion in denying the motion for continuance. That error was compounded by the failure to conduct a Richardson hearing.
Florida Rule of Criminal Procedure 8.220 requires the State to disclose the names and addresses of persons known to have information relevant to the offense or any defense. Fla. R. Crim. P. 3.220(b)(1)(A). Additionally, this rule requires the State to disclose reports or statements, including results of physical or mental examinations. Fla. R. Crim. P. 3.220(b)(l)(J). These requirements are continuing in nature:
If, subsequent to compliance with the rules, a party discovers additional witnesses or material that the party would have been under a duty to disclose or produce at the time of the previous compliance, the party shall promptly disclose or produce the witnesses or material in the same manner as required under these rules for initial discovery.
Fla. R. Crim. P. 3.220(j). “There are no exact ‘magic words’ or phrases which must be used ... to necessitate [a Richardson ] inquiry; only the fact that a discovery request has not been met.” Smith v. State, 7 So.3d 473, 506 (Fla.2009).
“Once a trial court has notice of a discovery violation, the court must conduct a Richardson hearing to inquire about the circumstances surrounding the state’s violation of the discovery rules and examine the possible prejudice to the defendant.” Jones, 32 So.3d at 710. “This requirement applies when the court learns of a possible discovery violation, in order to determine whether there has been an actual discovery violation.” Id. at 710-11 (emphasis in original).
Here, the State did not disclose the Michigan Exam Report or the Florida medical records. And, when requested, the State did not provide the Michigan Exam Report until just prior to trial. The defendant filed a motion for continuance the week before the trial, advising the trial court of the State’s failure to provide the Michigan Exam Report in a timely fashion and the Florida medical records at all. This sufficiently put the trial court on notice of a possible discovery violation.[2]
The trial court appeared to fault the Public Defender’s Office for not following through to obtain the Michigan Exam Report after it was disclosed during a deposition, but it failed to make any findings on the failure to disclose the Florida medical records and whether the State’s failure to *937 disclose either was willful or inadvertent, trivial or substantial, and whether it had a prejudicial effect on the defendant’s preparation.
Without these findings and with the refusal to continue the trial given the late disclosure of these reports, we cannot say the error was harmless. State v. DiGuilio, 491 So.2d 1129 (Fla.1986). The defendant was procedurally prejudiced because there is a reasonable possibility that the defendant’s trial preparation would have been materially different had the reports and witnesses’ names been disclosed sooner. We therefore reverse and remand the case for a new trial.

Reversed and Remanded for a New Trial.

STEVENSON and LEVINE, JJ., concur.

. Richardson v. State, 246 So.2d 771 (Fla.1971).

. This portion of the appellate review-the determination as to whether a possible discovery violation existed and whether to hold a Richardson hearing-is reviewed de novo. See Johnson v. State, 25 So.3d 662, 665 (Fla. 1st DCA 2010).