GERBER, J'.
The defendant appeals his convictions for aggravated battery with a firearm and shooting into a structure. The defendant argues that the trial court erred in: (1) overruling the defendant’s foundation and hearsay objections to a detective’s testimony that a recorded jailhouse phone call, implicating the defendant in the charged crimes, originated from the defendant’s housing area; and (2) overruling the defendant’s “beyond the scope of cross” objection to the detective’s redirect testimony that the police found a gun holster on the passenger floorboard of the car which the defendant was driving at the time of his arrest.
The first ruling was harmful error. The second ruling was not error. Based on the first ruling, we reverse and remand for a new trial. We will address each ruling in turn.

The Foundation and Hearsay Objections

The state’s theory of the case was that, following a failed drug deal between the defendant, his girlfriend, and two men, the defendant shot at the two men, striking *1014 one of them. The victims, who would testify at trial, identified the defendant to the police. The police eventually arrested the defendant.
The case detective testified that, after the arrest, one of the victims notified him about receiving a “three-way phone call” from the defendant — that is, the defendant allegedly called from the jail to a third party, who then connected the victim into the call. The detective testified that he contacted the jail to determine the phone call’s origin, and the jail provided him with records identifying the phone call’s origin. When the state asked the detective • to identify the phone call’s origin, defense counsel objected on the grounds of foundation and hearsay.
The trial court allowed defense counsel, outside of the jury’s presence, to voir dire the detective regarding his knowledge of the phone call’s origin. During the voir dire, the detective admitted that he did not know how the jail’s phone system operated and that he relied on the information contained in the jail’s records to identify the phone call’s origin.
After the voir dire, the defense renewed its objections to the detective identifying the phone call’s origin. Defense counsel argued, in pertinent part:
[Tjhere’s a proper foundation that needs to be established in these jailhouse phone call situations, which is someone from telecommunication comes in [and] explains how the process works; that we record every phone call; that you dial this number; whatever the process is, how it works, how it operates, how they’re able to identify a cell, how they’re able to identify phone numbers, what records they keep, what records they don’t keep. And give us a chance to cross-examine that person, give us a chance to confront that person as to the intricacies of the system, whether it works all the time, whether it’s a two percent flaw or not, whether it’s 98 percent successful .... Those are all issues that we need ... to address and confront. Now we’re just being told that [the detective] submits a form and gets something back. And now he’s able to testify about where it came from, what it tells him, all this other stuff that he doesn’t have a foundation to testify to.
The trial court overruled the defendant’s objections. The jury returned to the courtroom, and the detective’s testimony continued. The detective testified that the phone call’s origin was the defendant’s housing unit, and that the third-party phone number belonged to the defendant’s girlfriend. The detective further testified that he listened to the jail’s recording of the phone call, and he was familiar with the defendant’s voice because he had spoken with the defendant. According to the detective, the defendant identified himself by his first name on the phone call. The detective also testified that, at the time of the phone call, the only other inmate at the jail with the same first name as the defendant was in lockdown, which was in a different location from the defendant’s housing unit.
Over the defendant’s renewed objections, the state introduced the recording of the phone call into evidence, and played it for the jury. Much of the phone call was unintelligible for the court reporter to transcribe. However, after the state played the phone call, the detective testified that he interpreted the call as the defendant implicating himself in the charged crimes.
During cross examination, defense counsel asked the detective if it was possible that someone else made the phone call. The detective responded, “No, it’s not possible.” The detective also acknowledged that the only time he spoke with the defendant face-to-face was after the defendant’s *1015 arrest. According to the detective, “[i]t was a very brief conversation.”
During closing argument, the state contended that it was not possible for someone other than the defendant to have made the phone call. The state then contended as follows regarding the phone call:
[Y]ou got the phone records.... And there is a call from the jail records that matches up. Everything is consistent.
The phone call came from ... the area where the defendant was being housed.... There was one other person in the prison [with the defendant’s first name], who was in lockdown, was not even in that area.
[[Image here]]
This telephone call that you hear between the victim and the defendant is more powerful than any fingerprint evidence or any DNA evidence. Because in this call you can hear the defendant out of his own mouth admit his responsibility for this, apologize for it. He is confessing. He is admitting to what he did. And there’s no doubt about that when you hear it out of his own mouth.
On appeal, the defendant argues that the trial court erred in overruling his foundation and hearsay objections to the detective’s testimony identifying the phone call’s origin. We review the trial court’s ruling for an abuse of discretion, as limited by the rules of evidence. See Constant v. State, 120 So.3d 122, 124 (Fla. 4th DCA 2013) (“As an issue involving the admissibility of evidence, we review this matter for an abuse of discretion, limited by the rules of evidence.”) (citation and quotations omitted).
We conclude that the trial court erred in overruling the defendant’s foundation and hearsay objections to the detective’s testimony identifying the phone call’s origin. Section 90.604, Florida Statutes (2009), in pertinent part, states: “[A] witness may not testify to a matter unless evidence is introduced which is sufficient to support a finding that the witness has personal knowledge of the matter.” § 90.604, Fla. Stat. (2009). Where a witness has no personal knowledge of a matter, and the witness’s knowledge is derived entirely from information given by another, the witness’s testimony is incompetent and inadmissible as hearsay. See Holborough v. State, 103 So.3d 221, 223 (Fla. 4th DCA 2012) (arresting officer’s testimony identifying the non-testifying victim was inadmissible hearsay where no evidence existed that the officer personally knew the victim apart from the victim’s display of an identification card, which itself was hearsay for which the state did not attempt to meet the public records exception to the hearsay rule).
Here, during defense counsel’s voir dire of the detective, the detective admitted that he did not know how the jail’s phone system operated and that he relied on the information contained in the jail’s records to identify the phone call’s origin. Because the detective’s knowledge regarding the phone call’s origin derived entirely from the jail’s records, which itself was hearsay for which the state did not attempt to meet the public records exception to the hearsay rule, the detective’s testimony regarding the phone call’s origin was inadmissible.
The state argues that any error in permitting the detective to identify the phone call’s origin was harmless. See State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986) (“The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.”). According to the state, permitting the detective to iden *1016 tify the phone call’s origin was harmless because the detective identified the defendant’s voice on the phone call’s recording, which made the recording admissible.
The defendant contends that the error in permitting the detective to identify the phone call’s origin was harmful. According to the defendant, the detective’s identification of the phone call’s origin bolstered the detective’s identification of the defendant’s voice on the phone call’s recording. Thus, the defendant contends, the state was able to claim in closing argument that the phone call evidence was “more powerful than any fingerprint evidence or DNA evidence.”
We conclude that the error was harmful as the defendant contends. In reaching this conclusion, we recognize that the evidence against the defendant was overwhelming. However, in applying the harmless error test, our supreme court reminds us that the test “is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test.” Id. at 1139. Thus, the state cannot prove there is no reasonable possibility that the error did not contribute to the defendant’s conviction, especially when the state emphasized the detective’s testimony in closing argument. See Bartholomew v. State, 101 So.3d 888, 894 (Fla. 4th DCA 2012) (‘When determining prejudice, appellate courts may look whether the State compounded the error by relying on the evidence in final argument. This applies regardless of whether there is a separate objection to the use of the evidence in final argument.”) (internal citation omitted).

The “Beyond-the-Scope-of-Cross” Objection

During the detective’s direct examination, he testified about the police having recovered a gun, which testing showed was used in the shooting. According to the detective, the police recovered the gun from a man in a different county who was not involved with the shooting and who did not own the gun.
During cross examination, defense counsel asked the detective if the police found the gun on the defendant, his girlfriend, or “any of the characters or players that [the detective had] become familiar with in the course of [the] investigation.” The detective responded “no.”
During re-direct examination, the state asked the detective if he found a gun holster on the passenger floorboard of the car which the defendant was driving at the time of the arrest. Defense counsel objected that the question was beyond the scope of the cross examination. The court overruled the objection. The detective testified that he found a gun holster on the car’s passenger floorboard.
During re-cross examination, the detective acknowledged that the car which the defendant was driving at the time of the arrest belonged to the defendant’s girlfriend. The detective also acknowledged that he did not submit the gun holster for any type of lab testing, and that the police recovered the gun six months after the shooting.
The defendant argues that the trial court erred in overruling his objection that the detective’s re-direct testimony, describing the police finding a gun holster in the car which the defendant was driving at the time of his arrest, was beyond the scope of cross-examination.
We conclude that the detective’s re-direct testimony about the gun holster was not beyond the scope of cross examination. During cross examination, defense counsel attempted to deflect suspicion away from the defendant based on the fact that the gun used in the shooting was not found on the defendant, his girlfriend, or the vie- *1017 tims, but was found elsewhere with another person. During re-direct, the state merely attempted to explain its suspicion of the defendant based partly on the fact that the police found an empty gun holster in the car which the defendant was driving at the time of his arrest. This justification was minimally sufficient to admit the detective’s re-direct testimony about the empty gun holster. See Cartwright v. State, 885 So.2d 1010, 1013 (Fla. 4th DCA 2004) (“[A]s a general rule, testimony is admissible on redirect which tends to qualify, explain, or limit testimony given on cross-examination.”) (citation and quotations omitted).
In his brief, the defendant also argues that the gun holster evidence was irrelevant because there was nothing which linked the holster to the crimes charged. See, e.g., Jones v. State, 32 So.3d 706, 712-13 (Fla. 4th DCA 2010) (during a trial for attempted first degree murder and armed robbery, the trial court erred in denying the defendant’s motion in limine to exclude a gun cleaning kit seized from the defendant’s home, as “there was nothing unlawful about the defendant’s ownership of a gun cleaning kit and nothing was shown to connect it to the crimes charged”).
However, at trial, the defendant did not object to the relevancy of the gun holster. Therefore, the defendant did not preserve his relevancy objection for appeal. See Harrell v. State, 894 So.2d 935, 940 (Fla.2005) (“[I]n order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below.”) (citations and quotations omitted).
Nevertheless, because we are remanding this case for a new trial, we note our recognition that the gun holster evidence was irrelevant because there was nothing which linked the holster to the crimes charged. See Zama v. State, 54 So.3d 1075, 1079 (Fla. 4th DCA 2011) (“Although [the defendant] never raised an objection to any of the evidence concerning the bullet-proof vest at trial, we agree it was error to admit such evidence, which was unconnected to the crime.”).

Reversed and remanded for a new trial.

WARNER and CIKLIN, JJ., concur.