# Third District Court of Appeal
## State of Florida

Opinion filed July 2, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0018
Lower Tribunal No. F97-29034A
_____

**Steve Matthews,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal under from the Circuit Court for Miami-Dade County, Richard Hersch, Judge.

Steve Matthews, in proper person.

James Uthmeier, Attorney General, and Kayla Heather McNab, Assistant Attorney General, for appellee.

Before EMAS, LOBREE and GOODEN, JJ.

EMAS, J.

**INTRODUCTION**

Steve Matthews filed a motion for postconviction relief based on a claim of newly-discovered evidence. Following an evidentiary hearing, the trial court denied Matthews' motion. We affirm the trial court's order, but write to address one of Matthews' claims: the trial court erred in concluding that the testimony of Matthews' co-defendant (Ezra Naylor) would not be admissible at a new trial, in light of Naylor's refusal to be subject to cross-examination at the evidentiary hearing. We find no abuse of discretion in the trial court's evidentiary determination that Naylor's testimony would not be admissible at a new trial, and that the remaining evidence did not qualify as newly discovered. As a result, the trial court correctly determined the evidence presented by Matthews at the evidentiary hearing on his motion was not of such a nature that it would probably produce an acquittal if presented at a new trial, and therefore properly denied Matthews' motion for postconviction relief.

**FACTS AND PROCEDURAL HISTORY**

In 1997, Steve Matthews and Ezra Naylor were indicted for first-degree murder in the shooting death of Shawn Duncombe. Matthews was tried

separately,[1] was convicted as charged, and was sentenced to life in prison. The pertinent facts, evidence and testimony surrounding the crime, viewed in a light most favorable to the jury's verdict, are as follows:

In September 1997, Detective Messidor was working undercover on an unrelated case when she observed a Toyota Camry pull up directly behind her. Detective Messidor observed Ezra Naylor (Matthews' co-defendant) exit the passenger side of the Camry with a gun and cross a front yard toward a fence. On the other side of the fence was the victim, Shawn Duncombe. When Duncombe saw Naylor, he began to run. Naylor began shooting, hitting Duncombe and causing Duncombe to fall to the ground. Naylor then stood over Duncombe and "delivered one last shot to the head." Naylor fled, and Detective Messidor pursued him, but was unable to capture him at that time.

Soon thereafter, in response to radio calls, a different officer effectuated a stop of the Camry. Matthews was behind the wheel of the car when it was stopped, and a .357 revolver was found in a bag in the backseat;

---

[1] The trials of Matthews and Naylor were severed because Matthews had given a post-arrest statement—implicating Naylor—which the State intended to introduce into evidence at Matthews' trial. See Bruton v. U.S., 391 U.S. 123, 125 (1968) (holding that, in a joint trial, the admission of a non-testifying codefendant's confession that inculpates the other non-confessing codefendant constitutes a violation of the Confrontation Clause of the Sixth Amendment).

3

however, there is no evidence that this gun was the one used in the shooting of Duncombe.

Detective Estopinan, one of the lead detectives on the case, took possession of the firearm found in the Camry, and observed what he thought to be a ricochet or bullet strike on the Camry. During Detective Estopinan's investigation, he interviewed Matthews' girlfriend, from whom he learned that a dispute had arisen between Matthews and Duncombe over payment for a car Matthews bought from Duncombe. According to Matthews' girlfriend (Stacy McGahee), Duncombe had threatened to "shoot up" McGahee's house over the debt. McGahee told Detective Estopinan that Matthews was angry and troubled over this threat by Duncombe.

Matthews was arrested and taken to the police station, where he waived his Miranda rights and provided an unrecorded statement to two other Detectives (Bayas and Butchko) during a purported thirteen-hour interrogation. In his statement, Matthews initially denied any knowledge of the victim or the shooter. After being confronted with information discovered in the course of the investigation, Matthews admitted to the dispute over payment for the car that he purchased from Duncombe, and the threats made to his girlfriend, but indicated that the shooter was a person known as "G money." Eventually, however, Matthews identified his cousin, Naylor, as

4

the shooter. Matthews also admitted that he was aware of the presence of the gun in the car and that the purpose for driving to the area was to find and shoot Duncombe. Matthews said he trailed Naylor with the car as the shooting occurred and fled when he saw Detective Messidor.

Matthews testified at his trial, admitting to the dispute with Duncombe but denying any advance knowledge that Naylor was going to shoot Duncombe. The jury found Matthews guilty, and he was sentenced to life in prison without the possibility of parole. His conviction was affirmed. Matthews v. State, 758 So. 2d 682 (Fla. 3d DCA 2000). Matthews filed at least two motions for postconviction relief, each of which was summarily denied by the trial court and affirmed on appeal.

In March 2020, Matthews filed the underlying motion for post-conviction relief. Attached to the motion were affidavits from Ezra Naylor, Stacie McGahee, and Ruby Simms (McGahee's mother who was living with McGahee at the time of the murder).[2] Relevant to this appeal, co-defendant

---

[2] McGahee asserted in her affidavit that, in September 1997, police came to her home and informed her that Matthews had been arrested for murder. She averred that her mother (Simms) told the detectives that neither of them would give a statement about Matthews, thus directly refuting representations in the detective's police report in which Estopinan said McGahee and Simms each gave a statement and that McGahee told police that Duncombe had threatened to shoot up her house over the debt and that Duncombe's threat angered Matthews. Simms' affidavit reiterated

5

Naylor's affidavit, executed in April 2019, consisted of seven paragraphs, in which Naylor averred as follows:

> 1. That on December 17, 1997, I and Steve Matthews were indicted as principals to the murder of Shawn Duncombe in case number 97-29034.
>
> 2. I was found guilty of the murder on February 22, 1999.
>
> 3. Although Steve Matthews was charged and subsequently convicted of the crime charged in the above-said case number **Matthews did not participate in and had no advance knowledge that Shawn Duncombe would get killed**. **This statement is being provided as proof that Steve Matthews stands convicted for an offense that he actually did not commit.**
>
> 4. I refused to come forward with this information years ago. I was simply selfish and unwilling to testify about the facts of my case.
>
> 5. **I am now willing to testify at any hearing to the fact that Steve Matthews did not know Shawn Duncombe would be**

McGahee's assertion that neither she nor McGahee provided a statement to police.

The trial court determined, and we agree, that the information contained in these two affidavits does not constitute newly-discovered evidence because Matthews failed to establish that this evidence was unknown to him and that, in the exercise of due diligence, could not have been discovered prior to trial. See Jones v. State, 709 So. 2d 512, 521 (Fla. 1998) ("[I]n order to be considered newly discovered, the evidence 'must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence.'") (quoting Torres–Arboleda v. Dugger, 636 So.2d 1321, 1324-25 (Fla. 1994)).

**killed.** My statement is being provided that Steve could not have confessed to this offense.

6. That I am making this statement of my own free will and because it is the truth.

7. That I have not been offered any inducement, monetary, or otherwise from Steve Matthews or anyone else on his behalf.

(Emphasis added).

The trial court determined that, on its face, Naylor's affidavit constituted newly-discovered evidence, warranting an evidentiary hearing which the court held in April 2022. Matthews called Naylor to testify and, on direct examination, Naylor testified consistent with his affidavit, but provided no substantive testimony beyond that contained in his seven-paragraph affidavit. Naylor's attorney accompanied Naylor and was in attendance during Naylor's testimony at this evidentiary hearing on Matthews' motion for postconviction relief.

On cross-examination, the prosecutor sought to question Naylor regarding his own pro se motions for postconviction relief, which attacked the legality of his guilty verdict and life sentence for the first-degree murder of Duncombe. Naylor filed at least two postconviction motions in 2009. In those motions, Naylor swore that he was "actually innocent" and that "I didn't commit the crime, but I was chosen by Officer Messidor due to a falling out we had weeks earlier."

7

The State contended that Naylor's assertions of actual innocence in his postconviction motions appeared to contradict the averments made by him in the affidavit he later executed on behalf of Matthews. After all, how could Naylor know that "Matthews did not participate in and had no advance knowledge that Shawn Duncombe would get killed" unless Naylor himself was involved in or at least present at the shooting and killing of Duncombe? These 2009 postconviction motions, filed by Naylor and signed under penalty of perjury, were introduced into evidence without objection, and the State began to question Naylor about their contents:

> Q: Now, when you filed these motions, Mr. Naylor, these motions are -- are sworn —— sworn to and they're under oath; isn't that right?
> A: Yes, sir.
>
> Q: So you're attesting that everything that's in these motions is true, right?
> A: Yes, sir.
>
> Q: All right. And you claim in these motions, as you've claimed in the past, that you were not the person that shot and killed the victim in this case; isn't that right?
> A: I'm here today to attest to the affidavit I wrote for Mr. Matthews. My trial is done and over with. I don't —— I don't understand what's going on.
>
> Q: You prepared an affidavit with respect to Mr. Matthew's case; is that right?
> A: Yes, sir.
>
> Q: Okay. And that's the affidavit that was shown to you earlier that's in evidence, right?

A: Yes, sir.

Q: And in that affidavit, You say that Mr. Matthews had no idea there was going to be a shooting taking place?
A: Yes, sir.

Q: And when you're saying no idea that there was a shooting that was going to take place, are you referring to the death of Mr. Duncombe in this case?
A: Yes, sir.

Q: Now, are you saying that you were there during the shooting of Mr. Duncombe or not?
A: What I'm saying is I'm here to attest to the affidavit I wrote for Mr. Matthews.

Q: And in that affidavit, you say that he did not know there was going to be a shooting --
A: Yes.

Q: -- right? How do you know that Mr. Matthews did not know there was going to be a shooting?
A: I didn't know there was going to be---

At this point, Matthews' counsel objected to this line of questioning as "beyond the scope of direct" which the trial court properly overruled, as the questions went directly to (1) impeaching Naylor's affidavit and direct testimony at the hearing with evidence that he previously averred under oath that he was not involved with, and was actually innocent of, the murder of Duncombe; and (2) exploring how Naylor could have personal knowledge of Matthews' non-involvement in Duncombe's murder.

The cross examination continued:

Q: How did you know, as you say in the affidavit, that Mr. Matthews did not know anything about the fact that there was going to be a shooting?
A: Well, personally, me, I grew up with Mr. Matthews. If you'd have looked at Mr. Matthews past you'd never see that he ever committed any type of violent crime to anyone ever. And the reason I wrote the affidavit is because the same situation Mr. Matthews is going through, my son just—the same thing right now who's playing college ball. And I know that one mistake can take one man's life away.

Q: So, it's your position that the reason Mr. Matth—Mr. Matthews didn't know there was going to be a shooting is because he didn't have any kind of a prior criminal history or criminal conduct; is that right?
A: Yes.

Q: Okay. Are you saying that Mr. Matthews was not there during the shooting or that he was present during the shooting?
A: What I'm saying is that the history with Mr. Matthews, there's no violent streak. That's what I'm saying.

* * *

Q: Mr. Naylor, let me try and —— and put it a little more clearly. You say you're going to come into court if there's a new trial and you're going to testify for Mr. Matthews; is that right?
A: Yes, sir.

Q: And you're going to be placed under oath and you're going to swear to tell the truth?
A: Yes, sir.

Q: And you're going to say in your testimony that Mr. Matthews did not know there was going to be a death that day; is that right?
A: Yes, sir.

Q: Are you going to say in your testimony, I was there in the car with him, I had the gun. I got out and shot him, but Mr. Matthews didn't know that that was going to happen. Is that what you're

10

going to say or are you going to say you weren't there at all, but you know he didn't know?

A: I'm going to attest to whatever I wrote in the affidavit, sir.

Q: So your testimony would be limited to whatever language you used in the affidavit?

A: Yes, sir.

Thereafter, Naylor's counsel advised the court that Naylor "is not going to answer any questions about personal involvement that he had or did not have." Naylor's counsel also advised the trial court that, if there were a new trial, Naylor would likewise assert his Fifth Amendment right and refuse to testify in that regard.

Following the hearing, the trial court denied the motion for postconviction relief. This appeal followed.

## STANDARD OF REVIEW

"When . . . the postconviction court rules on a newly discovered evidence claim after an evidentiary hearing, this Court review[s] the trial court's findings on questions of fact, the credibility of witnesses, and the weight of the evidence for competent, substantial evidence. In addition, "we review the trial court's application of the law to the facts de novo." Walton v. State, 246 So. 3d 246, 250 (Fla. 2018) (internal citations and quotations omitted).

11

**ANALYSIS AND DISCUSSION**

Upon our review, we hold the trial court properly determined that, at any new trial, Naylor's testimony would not be admissible: either it would be inadmissible as irrelevant and speculative (i.e., not based on personal knowledge) or excluded because of Naylor's refusal to be subject to cross-examination regarding his own presence at or involvement in Duncombe's murder—areas of inquiry which went directly to testing the veracity, credibility and basis of knowledge of his affidavit and direct examination testimony that Matthews had no involvement in or foreknowledge of Duncombe's murder. See Bryant v. State, 124 So. 3d 1012, 1015 (Fla. 4th DCA 2013) ("[A] witness may not testify to a matter unless evidence is introduced which is sufficient to support a finding that the witness has personal knowledge of the matter. § 90.604, Fla. Stat. (2009). Where a witness has no personal knowledge of a matter, and the witness's knowledge is derived entirely from information given by another, the witness's testimony is incompetent and inadmissible as hearsay.") (quotation omitted); Bryant v. State, 386 So. 3d 567, 572 (Fla. 4th DCA 2024) ("A speculation objection is rooted in section 90.604, Florida Statutes, which requires a witness to have personal knowledge of the matter testified to.") (quotation omitted); Campbell v. Salman, 384 So. 2d 1331 (Fla. 3d DCA 1980) (holding trial court erred in

granting summary judgment relying on an affidavit signed upon "information and belief"; such an affidavit was not admissible in evidence because it was not based on personal knowledge).

Matthews' claim that the State's attempted inquiry on cross-examination was beyond the scope of the direct examination is equally without merit. As the Florida Supreme Court observed in describing the broad contours of permissible cross-examination:

> [W]hen the direct examination opens a general subject, the cross-examination may go into any phase, and may not be restricted to mere parts . . . or to the specific facts developed by the direct examination. Cross-examination should always be allowed relative to the details of an event or transaction a portion only of which has been testified to on direct examination. As has been stated, cross-examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut or make clearer the facts testified to in chief . . . .

Coxwell v. State, 361 So. 2d 148, 151 (Fla. 1978) (quoting Coco v. State, 62 So. 2d 892, 895 (Fla.1953) (additional citation omitted)).

And while Matthews certainly had the right to present witnesses at the evidentiary hearing, that right is not unbridled:

> The defendant's right to present witnesses in his own defense, however, does not carry with it the right to immunize the witness from reasonable and appropriate cross-examination.... The fifth amendment provides no immunity from cross-examination for a witness who elects to testify; it is not a "positive invitation to mutilate the truth a party offers to tell."

13

<u>Sule v. State</u>, 968 So. 2d 99, 105 (Fla. 4th DCA 2007) (quoting <u>Brown v. United States</u>, 356 U.S. 148, 156 (1958)).

The trial court determined that, although Naylor's affidavit on its face constituted newly-discovered evidence warranting an evidentiary hearing, Naylor's testimony at the evidentiary hearing undercut any claim of personal knowledge regarding Matthews' purported lack of involvement in (or knowledge of) Duncombe's murder. At best, Naylor's assertion (as explained in his testimony) was speculative—Naylor claimed that he knew Matthews didn't participate in Duncombe's murder because "he never committed any type of violent crime to anyone ever." In essence, Naylor's testimony at the evidentiary hearing nullified the central aspect of his affidavit, because he lacked any personal knowledge that Matthews was not involved in the murder of Duncombe.

Further, Naylor refused to answer any questions about his involvement in (or presence at) the murder of Duncombe, thus depriving the State of any ability to test the credibility of Naylor's naked assertion that Matthews was innocent of the murder. Finally, Naylor (through his counsel) confirmed that, should the trial court grant Matthews' motion and a new trial was held, Naylor would refuse to answer questions beyond what was contained in his affidavit, and would not testify regarding his involvement in Duncombe's murder.

14

Given the trial court's determination that Naylor's testimony would not be admissible at a new trial in light of Naylor's invocation of the Fifth Amendment and refusal to "subject himself to a full and fair cross-examination" on material issues relevant to the underlying crime and relevant to Naylor's affidavit and direct examination, we agree that Matthews failed to present any admissible newly-discovered evidence, and the trial court correctly denied Matthews' motion for postconviction relief. See Jones v. State, 591 So. 2d 911, 916 (Fla. 1991) (explaining that, at the evidentiary hearing on a newly discovered evidence claim, "the trial judge should consider all newly discovered evidence which would be admissible and determine whether such evidence, had it been introduced at the trial, would have probably resulted in an acquittal"); Suggs v. State, 238 So. 3d 699, 703 (Fla. 2017) (holding that because the purported newly discovered evidence "would be inadmissible as irrelevant and substantially more unfairly prejudicial than probative" at any new trial, it would not produce an acquittal on retrial and the claim was properly denied); Sule v. State, 968 So. 2d 99, 107 (Fla. 4th DCA 2007) ("Because [the witness's] invocation of the privilege shielded material matters from full and fair cross-examination, the trial court did not abuse its discretion in excluding his testimony.") (and cases collected).

15

We find instructive our sister court's decision in <u>Maul v. State</u>, 528 So. 2d 1384 (Fla. 4th DCA 1988). In that case, the defendant was charged in a hit-and-run accident. The concurring opinion in <u>Maul</u> reveals that one of the issues was whether the defendant was the person driving the vehicle involved in the hit and run. At trial, the defense announced it intended to call a witness who would testify that Maul was not driving the vehicle involved in the accident.

During a proffer outside the presence of the jury, the would-be witness testified that the vehicle in question was owned by him, but he typically kept it parked at Maul's house. The witness testified that, although his car was involved in an accident on the day in question, Maul did not drive the car on that day and was not involved in the accident.

The State was permitted to explore the witness' proffered testimony, as follows:

> Q: Why do you know that Mr. Maul was not involved in an accident on January 13th, 1986?
> A: 'Cause I know he wasn't.
>
> Q: Why?
> A: I know he wasn't.
>
> Q: How do you know that Mr. Maul was not involved in an accident on January 13th, 1986?
> A: I stand on the Fifth.

16

After some further discussion with the court, the witness indicated he would not answer the State's question:

Q: How do you know that Mr. Maul was not involved in an accident on January 13, 1986?
A: 'Cause the car wasn't at his house. It wasn't in his possession.

Q: Where was the car?
A: I stand on the Fifth.

Q: Whose possession was the car in on January 13th, 1986?
A: I stand on the Fifth.

Q: Who was driving the car on January 13th, 1986?

Id. at 1385-86 (Glickstein, J. concurring specially). The witness would not answer this final question. Accordingly, the trial court excluded the defense witness from testifying because he would not "subject[] himself to full, fair cross examination on the subject matter." Id. at 1386. In a 2-1 decision, the Fourth District affirmed the trial court's determination.

The instant case presents an even more compelling basis for affirmance, whether it is because the co-defendant Naylor refused on Fifth Amendment grounds to answer any questions beyond the minimal narrative contained in his affidavit, including questions that sought to explore how Naylor knew Matthews was not involved in Duncombe's murder; or because the questions Naylor was willing to answer revealed that he lacked personal knowledge of Matthews' involvement (or non-involvement) in Duncombe's

17

murder, thus rendering his testimony speculative. See Moore-Bryant v. State, 386 So. 3d 567, 572 (Fla. 4th DCA 2024) ("[A] speculation objection is rooted in section 90.604, Florida Statutes, which requires a witness to have personal knowledge of any matter testified to.") (quoting Orton v. State, 212 So. 3d 377, 379 (Fla. 4th DCA 2017); § 90.604, Fla. Stat. (2025) ("Except as otherwise provided in s. 90.702 [testimony by experts], a witness may not testify to a matter unless evidence is introduced which is sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may be given by the witness's own testimony.").

**CONCLUSION**

We find no abuse of discretion in the trial court's evidentiary determination that Naylor's testimony would not be admissible at a new trial, and that the testimony of the remaining witnesses did not qualify as newly discovered. Because Matthews failed to present sufficient, admissible, newly-discovered evidence at the hearing, the trial court correctly determined that the evidence presented was not of such a nature that it would probably produce an acquittal if presented at a new trial, and properly denied Matthews' motion for postconviction relief.

Affirmed.